IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA S. NAVOLIO, Individually and as the Administratrix of the Estate of MATTHEW A. HAMILTON, Deceased<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE COUNTY and PRIMECARE MEDICAL, INC., individually and officially,<br><br>Defendants | Civil Action No. 2:08-1286<br><br>Judge Terrence F. McVerry<br>Magistrate Judge Lisa Pupo Lenihan<br><br>Doc. Nos. 28, 32 |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Motions for Summary Judgment ("Motions") filed by Defendants Lawrence County ("Defendant Lawrence Co.") and PrimeCare Medical ("Defendant PrimeCare") (collectively, "Defendants") be granted.

**II. REPORT**

Plaintiff alleges in her Complaint that during her now deceased son's incarceration at the Lawrence County Jail ("LCJ"), Defendants violated his rights under 42 U.S.C. § 1983 and were negligent in caring for him. Plaintiff alleges that Defendants' actions led to her son's death.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

Plaintiff does not provide sufficient facts to show that there is a genuine issue for trial of her § 1983 claims. Therefore, Plaintiff cannot survive a motion for summary judgment and this Court

recommends that Defendants' Motions be granted and the case transferred to the appropriate state court.

      **A.**      **Factual and Relevant Procedural History**

The following facts are not in dispute. On September 13, 2006, Matthew A. Hamilton ("the decedent") was arrested on a bench warrant for a possible parole violation and placed in LCJ. On the following day, the decedent was evaluated for detoxification and was placed under the care of Defendant PrimeCare. Defendant PrimeCare administered to the decedent two detox medications, Vistaril and Bentyl. Vistaril is known to cause dizziness, drowsiness, confusion, blurred vision, nausea and dry mouth. Known side effects of Bentyl are blurred vision, constipation, decreased sweating, dizziness, drowsiness, dry mouth, lightheadedness, nausea, and nervousness.

On September 15, 2006, the decedent walked from his cell and down a flight of stairs to receive his evening medications. To Nurse Lynn Sharp, the on-duty nurse, the decedent complained of vomiting, and she informed him that she would obtain an order for medications to help with his condition. The decedent then walked back up the stairs to the second tier and approached his cell. Rather than returning to his cell, however, the decedent returned to the top of the stairway.

From the top step of the stairway, the decedent either jumped or fell[1] to the floor below. An ambulance arrived and took the decedent to Jameson Memorial Hospital, from which he was transferred by MedEvac helicopter to St. Elizabeth Health Care Center. On September 25, 2006, the decedent died as a result of his injuries.

---

[1]This is a point of contention among the parties. While Plaintiff asserts that the decedent fell backwards over the railing, Defendants postulate that he intentionally "vaulted" himself over the railing.

Plaintiff instituted this action with the filing of a Complaint on September 15, 2008, alleging, among state law claims, violation of the decedent's Fourth, Eighth, and Fourteenth Amendment rights. Plaintiff asserts that Defendants failed to provide the decedent adequate care and protection, were cognizant of the dangers faced by the decedent, were deliberately indifferent to the decedent's condition and level of care, and maintained policies or customs that resulted in the decedent's death. Accordingly, Plaintiff seeks damages pursuant to 42 U.S.C. § 1983. Defendant PrimeCare filed its Answer on October 13, 2008. After receiving an extension of time in which to file a response, Defendant Lawrence Co. filed its Answer on November 21, 2008.

At a June 22, 2009 status conference, Defendants indicated that they would request summary judgment. The deadline for their motions was set for July 22, 2009, with Plaintiff's response due August 24, 2009. Defendant PrimeCare filed its Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and Appendix to Concise Statement of Material Facts on July 15, 2009. Defendant Lawrence Co. filed its Motion for Summary Judgment, Brief in Support, and Concise Statement of Material Facts on July 22, 2009.

On August 27, 2009, after having received an extension of time, Plaintiff filed her Response to Motion for Summary Judgment of Lawrence County, a Responsive Concise Statement, and an Appendix to Concise Statement of Material Facts. On the following day, August 28, 2009, Plaintiff filed a Response to Motion for Summary Judgment of PrimeCare Medical, Inc., a Responsive Concise Statement (PC), and an Appendix to Response to Motion for Summary Judgment (PC). Also on that day, Plaintiff also filed a Memorandum of Law in Support of Responses to Motion for Summary Judgment of Lawrence County and PrimeCare Medical, Inc.

Defendant PrimeCare filed its Reply Brief and Response to Responsive Concise Statement of Facts on September 11, 2009. On September 18, 2009, Defendant Lawrence Co. filed its Reply Brief and Response to Plaintiff's Concise Statement of Material Fact.

**B.      Legal Standards**

　　　1.      Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying an absence of evidence to support the nonmoving party's case. *Id.* at 325. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the evidence relied upon in support of a motion for summary judgment must be admissible, it need not be in admissible form. *See* Fed.R.Civ.P. 56 (e); *Celotex* at 324; *J.F. Feeser,Inc., v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

2.      42 U.S.C. § 1983 and Constitutional Provisions

Section 1983 of the Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. Thus, to state a claim for relief under this provision, the plaintiff must demonstrate that the conduct alleged in the complaint was committed by a person or entity acting under the color of state law and that such conduct caused the deprivation of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

"As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The Constitutional privileges said to have been violated here are those offered by the Fourth, Eighth, and Fourteenth Amendments.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. For a plaintiff to assert a violation of the Fourth Amendment, there must have been either a search or a seizure. *See County of Sacramento* at 845 n.5 . Where there is neither, the claim cannot stand. *Id.*

The Eighth Amendment protects citizens against "cruel and unusual punishments . . .." U.S. Const. amend. VIII. In order to make out a prima facie case that a prison official has violated the Eighth Amendment, a plaintiff must establish two elements. First, a plaintiff must show that the

condition of confinement, either alone or in combination with other conditions or acts, deprived the inmate of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the plaintiff must demonstrate "deliberate indifference" to prison conditions on the part of prison officials. *Farmer v. Brennan*, 511 U.S. 825; *Wilson*, 501 U.S. at 297; *Rhodes*, 452 U.S. at 347.

Where the allegation is one of a denial or inadequacy of medical care, the plaintiff must prove that: 1) he was suffering from a "serious medical need" and 2) prison officials were deliberately indifferent to his need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *United States ex rel. Walker v. Fayette Co.*, 599 F.2d 573, 575 (3d Cir. 1979). A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); *Monmouth County Corr. Institut. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong's "deliberate indifference" may be manifested in an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). The deliberate indifference standard for purposes of liability under Section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. *Bd. of County Comm'r v. Brown*, 520 U.S. 397, 410 (1997). The defendant must both be aware of facts from which the

6

inference could be drawn that a substantial harm exists and draw the inference. *Farmer* at 837. An official who "fails to alleviate a significant risk that he should have identified" does not display deliberate indifference. *Id.* Accordingly, negligent diagnosis or treatment of a medical condition falls short of deliberate indifference as the official lacks the "requisite culpable state of mind." *Wilson* at 297.

The Supreme Court explained the difference between negligence and constitutional claims in *Estelle v. Gamble*, 429 U.S. 97 (1978). In that case, Gamble, the prisoner, was injured when a bale of cotton fell on him while he was unloading a truck. *Id.* at 99. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. *Id.* Gamble later returned to the hospital, where he was given pain pills by an inmate nurse and was examined by a doctor. *Id.* On the following day, Gamble was diagnosed with a lower back strain and was prescribed a pain reliever and a muscle relaxant. *Id.* Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. *Id.* Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. *Id.* at 100. Over the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. *Id.* Subsequently, a medical assistant examined him and ordered hospitalization for treatment of irregular cardiac rhythm. *Id.* at 101. Overall, Gamble was seen by medical personnel on 17 occasions spanning a 3-month period. *Id.* at 107.

The Supreme Court determined, "Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is 'based solely on the lack

of diagnosis and inadequate treatment of his back injury.'" *Id.* It held that Gamble's allegations failed to state a claim upon which relief could be granted against particular defendants. *Id.* It noted:

> . . . [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Id.* (internal citations omitted).

Finally, the Fourteenth Amendment, in part, states, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Constitution imposes upon states a responsibility for the safety and well-being of their inmates. *Deshaney v. Winebago County Dept. of Soc. Serv.*, 489 U.S. 189, 199-200 (1989). However, "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, J., plurality opinion) (internal quotations omitted).

### C. Defendants' Motions for Summary Judgment

Defendant PrimeCare first asserts in its Motion that it is entitled to summary judgment since no material fact is in dispute. It posits that Plaintiff has failed to produce any evidence showing that the decedent's death resulted from his reaction to his detox medications and his being permitted to ascend the stairs on his own. It notes that Plaintiff does offer an expert report stating that "[s]uicide is not a reasonable consideration in this case" and that the decedent landed head first on the ground.

Defendant PrimeCare cautions, however, that the expert report was completed before discovery and notes that its own eye witness, Captain Shawn Carna, has testified that the decedent voluntarily jumped from the stairs and landed on his feet and then hit his head on the ground.

Defendant PrimeCare avers that, given its position that no material fact is in dispute, it is entitled to summary judgment on Plaintiff's Eighth Amendment claim. It explains that its staff has discretion as to whether an inmate should be assisted up the stairs and that Nurse Sharp determined that the decedent was able to safely ascend the stairs on his own. Defendant PrimeCare argues that Plaintiff "is merely questioning this decision and has failed to allege any wrongdoing . . . which would even begin to approach the level required for the finding of a Constitutional violation under § 1983."

Defendant PrimeCare also asks that, upon the dismissal of the § 1983 claim, this Court transfer Plaintiff's state law claims to the appropriate state court.

Defendant Lawrence Co. also argues that Plaintiff's § 1983 claim must fail. It interprets Plaintiff's Complaint as alleging that it was deliberately indifferent to the decedent's condition in allowing him to ascend the stairs alone and to use a stairway with an inadequate railing, both while experiencing side effects of detox medication. It denies, though, that the decedent's death resulted from his reaction to the medication. Defendant Lawrence Co. points to the incident report and testimony of Captain Carna that the decedent voluntarily jumped and discounts Plaintiff's expert report's note that "ambulation involving stairwells should have been carefully monitored." Defendant Lawrence Co. points out that when the decedent received his medications just before the accident, he notified Nurse Sharp that he had vomited and that he did not mention any side effects such as dizziness or confusion.

As to Plaintiff's reference to the sufficiency of the railing, Defendant Lawrence Co. notes again that the decedent did not display signs of dizziness or blurred vision. It offers that inmates involved in similar incidents fell not from the stairs but from a balcony, and were both attempting suicide. Here, it notes, Plaintiff has not asserted that Defendant Lawrence Co. failed to prevent a suicide attempt.

Defendant Lawrence Co. insists that the decedent received adequate care in the detoxification program and that Plaintiff's expert's report displays only a disagreement with Defendant Lawrence Co.'s nurse's medical judgment. It concludes, then, that the decedent displayed no serious medical need and that Nurse Sharp's permitting him to ascend the stairs does not amount to deliberate indifference.

Finally, Defendant Lawrence Co. also requests that Plaintiff's state law claims be remanded upon dismissal of the Section 1983 claim.

Plaintiff replies to both Motions in her Memorandum of Law in Support of Responses. Although Defendants emphasize the weakness of Plaintiff's Eighth Amendment claim, Plaintiff's Memorandum focuses on an alleged violation of the Fourteenth Amendment right to due process. Plaintiff argues that Defendants created a danger to the decedent "which deprived him of life, without due process of law." Plaintiff maintains that her evidence demonstrates that Defendant Lawrence Co. "was reckless and grossly negligent in protecting [the decedent], it may have also been deliberately indifferent to the medical needs of [the decedent], and that [Defendant Lawrence Co.] had sufficient time to engage in actual deliberations and unhurried judgments relative to the safety concerns at the jail." Her primary argument appears to be that Defendants knew of dangers

10

associated with the particular stairway and of side effects associated with the decedent's medications, and that they erred in allowing the decedent to use the stairway alone.

Plaintiff also insists, without citation or explanation, that "there are also viable *Monnell* [sic] claims." In *Monell*, a class of female employees sued under § 1983 asserting that the defendants' official policy compelled pregnant employees to take unpaid leaves of absence before those leaves were medically necessary. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 660-61 (1978). There, the Court ultimately held that a local government can be directly liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury . . .." *Id.* at 694.

> . . . [I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Bd. of the County Comm'r v. Brown* 520 U.S. 397, 403-04 (1997) (citations omitted). Further, the plaintiff must show that, through the municipality's deliberate conduct, it was the "moving force" behind plaintiff's injury. *Id.* at 405. Accordingly, there must be "a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

Here, Plaintiff takes issue with Defendants' practices of: not following its policy of having inmates personally escorted to the on-duty nurse; not following its policy of housing detox inmates in cells on the LCJ's first tier; not training prison officials to identify signs of an inmate's suffering side effects of detox medications; and allowing inmates under the influence of detox medications

11

to travel the stairs unassisted. She claims that the combination of these customs proximately caused decedent's death.

**D.     Analysis**

As indicated above, the Court must begin its § 1983 analysis by addressing the Constitutional provisions alleged to have been violated. Again, Plaintiff's Complaint cites the Fourth, Eighth, and Fourteenth Amendments. Defendants' Motions focus on the Eighth Amendment claims; Plaintiff's Response references only the substantive due process of the Fourteenth Amendment. This Court concludes that, like the prisoner in *Estelle v. Gamble*, Plaintiff at bar has failed to demonstrate that the decedent suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Therefore, it is recommended that Defendants' Motions be granted.

First, Defendants should be granted summary judgment as to Plaintiff's Fourth Amendment claim since there was neither a search nor a seizure in this instance. Without a search or seizure, there can be no violation of the Fourth Amendment, and Plaintiff makes no attempt to establish a right to relief for a violation of the Fourth Amendment beyond its cursory reference in the Complaint.

Pursuant to the Eighth Amendment, Plaintiff is alleging cruel and unusual punishment in Defendants' treatment of the decedent. Again, where a plaintiff alleges a violation of his Eighth Amendment rights due to the denial or inadequacy of medical care, he must demonstrate his own serious medical need and the prison officials' deliberate indifference to that need. *Estelle* at 104. As stated above, a "serious" medical need is one that either has been diagnosed by a physician or is so obvious that a layperson would identify the need for medical attention. *Gaudreault* at 208; *Monmouth* at 347.

Apparently, the "serious medical need" that Plaintiff is asserting is decedent's reaction to detox medications and resulting assistance required by the decedent to safely descend and ascend the stairs. It is questionable whether the need existed at all, however, given that the decedent did in fact walk from his cell, down the stairs, back up again, and toward his cell. It was only after ambulating the stairs that the decedent returned to the top stair and either fell or jumped to the floor below. Further, Nurse Sharp has testified that she used her own professional judgment in determining that the decedent could travel the stairs safely alone. She has testified that just before his death, the decedent complained not of confusion, dizziness, or blurred vision, but only of vomiting. Nurse Sharp has testified also that the decedent's pulse, respirations, and body temperature all fell within the normal range. Plaintiff, however, stresses that the decedent presented with weakness, restlessness, sweating, muscle twitching, and anxiety. These symptoms, however, in the absence of disorientation, would not amount to a serious medical need. Plaintiff fails, therefore, to show that the decedent was impaired such that he presented a serious medical need for assistance on the stairs.

Assuming for the sake of analysis that the decedent did present a serious medical need, we will move to the second prong, which mandates that prison officials must have been deliberately indifferent to that need. Treatment that is merely negligent falls short of the deliberate indifference standard. *Wilson* at 297. "'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). To have acted with deliberate indifference, the prison official

13

must have known or been aware of a substantial risk of serious harm to Plaintiff. *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001). A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims, as there are typically several acceptable ways to treat a patient. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). Nurse Sharp has testified that she used her own medical judgment in assessing the decedent's condition, whereas Plaintiff's expert opines that the decedent should have been assisted on the stairs. In this instance, Plaintiff has done nothing more than disagree as to the appropriate treatment of the decedent, and has not established Defendants' deliberate indifference.

While acknowledging the tragic loss of life that occurred here, the Court nonetheless concludes that Plaintiff has failed to adduce facts sufficient to entitle her to relief as to her Eighth Amendment claim and therefore recommends that Defendants' Motions be granted.

Plaintiff also raises the Fourteenth Amendment's entitlement to substantive due process. In light of *Albright*, however, these claims are superseded by Plaintiff's Eighth Amendment allegations, since the Eighth Amendment "provides an explicit textual source of constitutional protection" against the behavior alleged. *See Albright* at 273. Therefore, Defendants' Motions should be granted as to Plaintiff's Fourteenth Amendment claim.

Finally, Plaintiff seeks to hold Defendants liable under the principle provided in *Monell*. That case, however, stands primarily for the proposition that a municipality may be held liable for the actions of its employees, though not on the basis of *respondeat superior*, but directly under §

14

1983. *Monell* at 691. Under *Monell* and its progeny, there first must be a constitutional violation suffered by the plaintiff. *Mark v. Borough of Hatboro*, 51 F.3d 1137 (3d Cir. 1995). The Supreme Court has specified that the issues to be examined in such a claim are "(1) whether the plaintiff's harm was caused by a constitutional violation, and, if so, (2) whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Here, as we have determined that there was no constitutional violation, Plaintiff cannot hold Defendants directly liable under § 1983; Defendants Motions for Summary Judgment should be granted.

The Court should note that Plaintiff and Defendants strenuously argue whether the decedent fell or jumped to his death. Plaintiff cites the Mahoning County Coroner's report, which states, in part, "When the decedent reached the top of the stairwell, according to Captain Carna, he was leaning against the railing with his back. The decedent then fell backwards over the railing . . .." Defendants, on the other hand, cite Captain Carna's incident report and subsequent testimony that the decedent intentionally vaulted himself over the railing. While the issue is disputed by the parties, it does not preclude the entry of summary judgment because it is not a "material" fact. Given the Court's determinations that the decedent did not present a serious medical need and that Defendants did not display deliberate indifference, the cause of the decedent's death is immaterial to Plaintiff's federal claims.

Therefore, since Plaintiff has failed to set forth facts essential to her claims and has not established that there is a genuine issue of material fact for trial, it is recommended that Defendants' Motions for Summary Judgment be granted.

**E.     State Law Claims**

Under 28 U.S.C. § 1367, a district court may decline to exercise its supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C.A. § 1367(c)(3). In interpreting this provision, the Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).

The Court concludes that in this case, there is no affirmative justification to retain jurisdiction over Plaintiff's state law claims. As it recommends that Defendants' Motions for Summary Judgment as to the federal claims be granted, it further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motions for Summary Judgment be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: January 5, 2010                    By the Court:

_____
LISA PUPO LENIHAN
U.S. MAGISTRATE JUDGE

cc:     Counsel of Record